**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SHAWNESE JONES,<br><br>Plaintiff,<br><br>v.<br><br>LAKESIDE PHASED, LLC and KMG PRESTIGE, INC.,<br><br>Defendants. | ) | Case No. 26-cv-1683<br><br>Honorable Joan B. Gottschall |

## MEMORANDUM OPINION AND ORDER

Established by the United States Housing Act of 1937, as amended, and overseen and administered by the U.S. Department of Housing and Urban Development (HUD), "The Section 8 Housing Choice Voucher Program provides rental assistance to low-income families to enable them to participate in the private rental market." *Khan v. Bland*, 630 F.3d 519, 523–24 (7th Cir. 2010); *see* 42 U.S.C. § 1437f. Plaintiff Shawnese Jones rents an apartment in Lakeside Tower Apartments, a Section 8 property in Waukegan, Illinois, owned and operated by defendants. *See* Compl. ¶¶ 4–6, Dkt. No. 7. In February 2026, Jones filed a six-count complaint, alleging claims facially arising under state law for breach of contract, as well as other state law theories of recovery. Jones maintains that this court possesses federal question jurisdiction over her Count I breach of contract claim because she pleads that defendants have violated a variety of HUD regulations and rules governing the Section 8 voucher program. *See* Compl. ¶¶ 88–103.

Defendants Lakeside Phased, LLC (Lakeside), and KMG Prestige, Inc. (KMG), move to dismiss Jones's complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Mot. Dismiss 2, Dkt. No. 18. To resolve defendants' jurisdictional challenge, the court must determine whether Jones's breach of contract claim falls into a "special and small category" of state law claims that necessarily raise embedded questions of federal law. *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (quoting *Empire Healthchoice*

*Assur., Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)). As explained below, Jones has not carried her burden to show that this narrow exception applies. *See generally Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312–14 (2005).

## I. Background

Lakeside Tower Apartments is a Project-Based Rental Assistance (PBRA) property, the complaint sometimes calls it a Section 8 PBRA property, under the auspices of HUD. *See* Compl. ¶ 90. For context, a short primer on the Section 8 PBRA program follows. The United States Housing Act of 1937, as amended, provides: "For the purpose of aiding low-income families in obtaining a decent place to live and of promoting economically mixed housing, assistance payments may be made with respect to existing housing in accordance with the provisions [of the statute.]" 42 U.S.C. § 1437f(a). Under the PBRA program, HUD often provides financial assistance to a public housing agency, such as the Chicago Housing Authority, to assist with constructing and operating housing for low-income people. *See* 42 U.S.C. § 1437f(b)(1); *Thomas v. Chi. Hous. Auth.*, 919 F. Supp. 1159, 1163 (N.D. Ill. 1996). "In areas where no public housing agency has been organized . . . the Secretary [of Housing and Urban Development] is authorized to enter into . . . contracts [with property owners and managers] and to perform the other functions assigned to a public housing agency." 42 U.S.C. § 1437f(b)(1).

A person's income determines eligibility for the Section 8 voucher program. *Khan*, 632 F.3d at 524 (citing 24 C.F.R. § 982.201). "Qualified participants pay a percentage of their income toward rent and utilities." *Id.* (citing 42 U.S.C. § 1437f.). Once a participant is determined to be eligible, the public housing agency or HUD pays the balance of their rent, which is based on market rates, under a HAP (Housing Assistance Payment) contract between the landlord and the state or federal agency. *See id.*; 42 U.S.C. § 1437f(c)(1), (c)(3), (c)(4); 24 C.F.R. § 982.4. HUD regulations prescribe the form of a HAP contract and incorporate certain Section 8 regulations by reference. *See Khan*, 632 F.3d at 524; 24 C.F.R. § 982.401. However, the tenant's lease with the property owner is separate from the HAP contract. *Khan*, 632 F.3d

at 524 (citation omitted). Section 8's implementing regulations specify the minimum requirements for a Section 8 lease, and HUD has promulgated a model lease, though Section 8 landlords are not required to use it in full. *Id.* (citing 42 U.S.C. § 1437f(o)(7) and 24 C.F.R. § 982.305(a)); 24 C.F.R. § 880.606(c); U.S. Dep't of Hous. & Urb. Dev., Form HUD-90105a, Model Lease for Subsidized Programs (2007) (hereinafter "HUD Model Lease"). A tenant's eligibility for the Section 8 program must be recertified annually. *Id.* (citing 24 C.F.R. § 982.516).

Broadly speaking, Jones's claims stem from a protracted dispute that appears to have begun shortly after KMG took over managing Lakeside Tower Apartments in 2023. She pleads: "Beginning in September 2023, Defendants issued a series of rent-demand and termination-related notices that were materially inaccurate and procedurally defective, including because they did not reliably explain or properly itemize the amounts claimed, were based on inflated rent charges not properly calculated nor properly noticed to Plaintiff, were not served in the manner required by HUD rules, and did not provide the basic protections contemplated by the PBRA termination framework." Compl. at 2 (unnumbered paragraph); *see generally* Compl. ¶¶ 17–78.

Jones pleads six claims under (facially) Illinois law for breach of contract (Count I); under the Illinois Landlord Retaliation Act, 765 Ill. Comp. Stat. 721/1 *et seq.* (Count II); violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2, 505/10a (Count III); for breach of the covenant of quiet enjoyment implied in her lease (Count IV); for promissory estoppel (Count V); and for negligent hiring, supervision, and retention of the onsite property manager (Count VI). *See* Compl. ¶¶ 88–142. Jones relies on Count I to provide a basis for federal jurisdiction.

Jones premises Count I on HUD Form 90105a, a model lease agreement she alleges PBRA landlords are required to use in substantially the form HUD has prescribed. *See* Compl. ¶ 89; HUD Model Lease, Compl. Ex. A. The HUD Model Lease (Jones's individual lease is not

in this record)[1] requires the lessor to abide by numerous HUD regulations, including, as highlighted in the complaint, rules governing the timely and accurate computation of monthly rent payments; rules requiring timely annual recertifications of a tenant's eligibility; a requirement that tenants be given thirty days' notice, in a specified form, before an authorized rent increase; rules for the timing, content, and manner of service of notices of lease termination proceedings; and rules forbidding interference with tenants' rights to organize. *See* Compl. ¶¶ 90–99 (collecting citations).

The majority of Jones's fifty-five-page complaint is devoted to describing defendants' alleged breaches of these contractual duties and their alleged violations of HUD regulations and rules, some of which are set out in HUD handbooks and publications. *See generally* Compl. ¶¶ 17–84. The following is a summary of the events detailed in Jones's complaint:

- Based on Jones's March 6, 2023, Annual Recertification form, her monthly rent was $119.00 beginning on April 1, 2023. Compl. ¶ 17; Mar. 2023 Annual Recertification Form at 1, Compl. Ex. B.

- July 1, 2023: Lakeside Tower Apartments management is turned over to KMG. Compl. ¶ 18. KMG issues notices to tenants, stating, among other things, that "Ownership has agreed to remove all balances owed before July, where possible." July 2023 Letter at 1, Compl. Ex. C.

- September 18, 2023: Jones receives her first "Failure to Pay Rent" notice, Compl. ¶ 22. KMG informs Jones that she owes Lakeside $430.00 and that "[her] possession of [her unit] will be terminated" unless "payment . . . is made on or before THIRTY (30) days after service of this notice." Sept. 2023 Notice at 1, Compl. Ex. D.

- May 23, 2024: Jones receives a "Balance Due Notification," informing her that she owes Lakeside $1,654.00 in rent and late fees. Compl. ¶ 25; May 2023 Notice at 1, Compl. Ex. E.

- June 30, 2024: "[M]anagement slid a notice under Ms. Jones's door which advised that her key-fob apartment access had been deactivated." Compl. ¶ 35. The notice read in part: "We've been trying to get a hold of you many

[1] Exhibit B to the complaint consists of photographs of three pages of an addendum to Jones's lease. This addendum dated March 6, 2023, appears to be the end product of the annual recertification process by which Jones's continued Section 8 eligibility was determined and the amount of her rent was fixed. *See id.* The addendum dated March 6, 2023, does not reference HUD rules or regulations other than rules governing annual recertification. *See id.*

times and have not been successful. We've temporarily deactivated your key fob." June 2024 Notice at 1, Compl. Ex. H.

- September 10, 2024: Jones receives a second "Failure to Pay Rent" notice from KMG. The notice informs Jones that she owes Lakeside $3,973.00. Compl. ¶ 44; Sept. 2024 Notice at 1, Compl. Ex. O.

- November 1, 2024: Jones's attorney emails HUD a letter, complaining about the "continued mismanagement" of Lakeside Tower Apartments, citing, among other complaints, KMG's inability to "maintain accurate records of tenant rent balances" and its continued issuance of "erroneous and threatening rent due notices." Compl. ¶ 49; Nov. 2024 Letter at 2, Compl. Ex. P.

- September 11, 2025: KMG issues Jones a third "Failure to Pay Rent" notice, informing plaintiff that she owes $9,176.00. Compl. ¶ 56; Sept. 2025 Notice at 1, Compl. Ex. S.

- November 6, 2025: KMG sends Jones a "Landlord's Thirty Days' Notice" informing her that she owes Lakeside $10,218.00 in rent. Compl. ¶ 64, Nov. 2025 Notice 1, Compl. Ex. U.

- January 9, 2026: KMG informs Jones through counsel that her "current balance [is] $11,274." KMG also asserts that its rent calculations were correct and that the termination notices it sent Jones were "served correctly." Compl. ¶¶ 71–72; Jan. 2026 Email at at 2, Compl. Ex. K.

- February 11, 2026: KMG tapes a "Vacant Unit" notice over Jones's mailbox. Compl. ¶ 73; Vacant Unit Notice 1, Compl. Ex. W.

## II. Analysis

"The party invoking federal jurisdiction bears the burden of establishing that it exists." *Sykes v. Cook Inc.*, 72 F.4th 195, 205 (7th Cir. 2023) (citing *Page v. Democratic Nat'l Comm.*, 2 F.4th 630, 634 (7th Cir. 2021)). The general federal question statute, 28 U.S.C. § 1331, authorizes federal district courts to exercise jurisdiction over civil actions arising under federal law. Jones invokes federal question jurisdiction over Count I only. Compl. 1. As for Counts II–VI, she contends that they are supplemental to Count I, Compl. ¶ 2, so the court has jurisdiction over them insofar as they and Count I arise out of the same transaction or occurrence within the meaning of Article III of the U.S. Constitution. 28 U.S.C. § 1367(a). As a general rule, "when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over

pendent state-law claims rather than resolving them on the merits." *McHugh v. Ill. Dep't of Transp.*, 55 F.4th 529, 532 (7th Cir. 2022) (quoting *Lalowski v. City of Des Plaines*, 789 F.3d 784, 794 (7th Cir. 2015)). Jones does not suggest that this case, which has not proceeded beyond the pleadings stage, raises an exception to the general rule, so jurisdiction turns on whether Count I arises under federal law for purposes of 28 U.S.C. § 1331.

Courts employ the well-pleaded complaint rule to assess federal question jurisdiction under § 1331. *See Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908); *NE. Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n, Inc.*, 707 F.3d 883, 891 (7th Cir. 2013). Under the longstanding well-pleaded complaint rule, a suit arises under federal law only when the plaintiff's statement of his own cause of action shows that it is based upon federal law. *NE. Rural Elec.*, 707 F.3d at 891. "It is not enough that the plaintiff alleges some anticipated defense to his cause of action and asserts that the defense is invalidated by some provision of federal law." *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) (brackets omitted) (quoting *Mottley*, 211 U.S. at 152).

As she must, Jones concedes that on its face Count I's breach of contract claim presents a state law cause of action, one that does not satisfy the well-pleaded complaint rule. *NE. Rural Elec.*, 707 F.3d at 891 (breach of contract claim). "In the mine run of cases, 'a suit arises under the law that creates the cause of action.'" *Atl. Richfield Co. v. Christian*, 590 U.S. 1, 13 (2020) (quoting *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916)). The Supreme Court has held that there is a "special and small category of cases" that originate in state law yet still arise under federal law for purposes of federal question jurisdiction. *Gunn*, 568 U.S. at 258. To qualify for this exception, a state law claim must "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314; *accord NE. Rural Elec.*, 707 F.3d at 891; *see Grable*, 545 U.S. at 312.

When analyzing federal question jurisdiction in this area of the law, courts draw the line by assessing the degree to which the Section 8 plaintiff's claims are individually fact-specific,

the probability that resolution of the federal compliance issues the complaint raises will affect other tenants and applicants, and the strength of the federal government's interest in the uniformity thought to be gained by federal adjudication of a Section 8 plaintiff's state law claims. *See Jones v. GMF-Forest Cove, LLC*, 2024 WL 6874550, at *3–4 (N.D. Ga. May 23, 2024) (citing *Kelly v. Bayview Loan Serv'g, LLC*, 2016 WL 67285, at *3 (N.D. Ga. Jan. 5, 2016)); *Williams v. Umeuett*, 2025 WL 2985264, at *2–3 (E.D.N.C. Aug. 4, 2025), *R. & R. adopted*, 2025 WL 2979681 (Oct. 22, 2025); *Evans v. Sentry Prop. Mgmt. Corp.*, 852 F. Supp. 71, 72–73 (D. Mass. 1994).

Jones's complaint cites a variety of HUD rules and regulations defendants allegedly violated between July 1, 2023, and the date she filed her complaint. *See, e.g.*, Compl. ¶¶ 91–100. But Count I is also premised on a contractual theory that KMG's letter to tenants dated July 1, 2023, waived defendants' contractual right to collect amounts reflected on Jones's account statement before that date. *See* Compl. ¶¶ 20–21, 45(a), 101(b); Letter dated July 1, 2023, Compl. Ex. C. Jones does not allege or argue that this letter was required by any statute, rule, or regulation. Rather, she pleads that defendants have breached her lease's implied covenant of good faith and fair dealing by later failing to honor the putative waiver in account statements and negotiations. *See* Compl. ¶ 101(b).

The Seventh Circuit has found no federal question jurisdiction where a claim raises some federal issues and also contains nontrivial issues of state law. *See Evergreen Square of Cudahy v. Wis. Hous. & Econ. Dev. Auth.*, 776 F.3d 463, 466 (7th Cir. 2015) (citing *Hartland Lakeside Jt. No. 3 Sch. Dist. v. WEA Ins. Corp.*, 756 F.3d 1032, 1033 (7th Cir. 2014); other citation omitted). The duties Jones seeks to enforce derive, if at all, from state law, not federal law, for state law creates and determines the scope of the covenant of good faith and fair dealing implied in Jones's lease agreement. *See Nw., Inc. v. Ginsberg*, 572 U.S. 273, 287 (2014) ("[T]he implied covenant of [good faith and fair dealing] must be regarded as a state-imposed obligation."). Thus, Jones's waiver argument, a legally and financially significant issue for her, must be resolved by applying state law principles of contract, and her breach of contract claim therefore does not necessarily

raise embedded questions of federal law, even though it may provide a stepping stone to vindicating her claims that defendants violated Section 8 rules. *NE. Rural Elec.*, 707 F.3d at 891. The good faith and fair dealing issues Jones raises are substantial and defeat federal question jurisdiction here.

Jones relies on three Seventh Circuit cases, but each is distinguishable. *See* Resp. to Mot. Dismiss 3–6, Dkt. No. 20. In *Holbrook v. Pitt*, 643 F.2d 1261, 1270–73 (7th Cir. 1981), a group of tenants sued their landlord as intended third-party beneficiaries of the landlord's HAP contract with HUD. The case began in state court and found its way to federal court after the defendant landlord filed a third-party complaint against HUD. *See id.* at 1265–66. That procedural move made HUD a party, allowing it to remove the case to federal court under the federal officer and agency removal statute. *See id.* Since Jones does not name HUD as a defendant, *Holbrook*, which did not opine at all on subject matter jurisdiction, does not resolve defendants' jurisdictional challenge.

In the second case Jones cites, a Wisconsin Section 8 property owner sued a public housing agency for breach of a HAP contract, alleging that the housing authority misapplied HUD rules concerning annual across-the-board rent increases. *See Evergreen*, 776 F.3d at 464–65. The Seventh Circuit held that the property owner's claims fell within the *Grable* exception and arose under federal law. *Id.* at 466–67. The landlord's state law claim, the Seventh Circuit reasoned, "turn[ed] on issues of federal law" specifically, the application of 42 U.S.C. § 1437f and related regulations and notices promulgated by HUD. *Id.* at 467. "While state law may create the breach-of-contract causes of action, the only disputed issues involve the proper interpretation of Section 8 and HUD's implementing guidance." *Id.* Here, by contrast, Jones's complaint presents a mix of federal and state law issues, such as the good faith and fair dealing questions discussed above.

In Jones's third case, the Seventh Circuit, while finding federal question jurisdiction over third-party beneficiary claims of Section 8 applicants against property owners, delineated a limiting principle. *See Price v. Pierce*, 823 F.2d 1114, 1121 (7th Cir. 1987). The HUD contracts

at issue in *Price* implemented a federal statute requiring property owners to set aside a fixed percentage of Section 8 units in certain developments. *See id.* at 1119. Uniform interpretation of those contracts, the Seventh Circuit held, counseled in favor of federal jurisdiction. *See id.* at 1120–21. But the *Price* court distinguished these contracts, which affect the overall operation of the Section 8 program, from ordinary contract claims brought by the "30,000 eligible persons [for Section 8 housing] in DuPage County alone." *Id.* at 1121. The Seventh Circuit cautioned that it would be implausible to think that this large group of tenants would be able to sue in federal court and stated that permitting them to sue could be contrary to the "objectives of the Section 8 program" because "so wide a net of [federal] liability could make developers reluctant to participate in the program." *Id.*

*Price* teaches that not every dispute between a Section 8 tenant and landlord triggers federal question jurisdiction. *See id.* Consistent with the Seventh Circuit's concerns about deterring participation in the Section 8 program, courts across the country have generally found no federal question jurisdiction over applicants' and tenants' run of the mill state law claims against Section 8 landlords and property managers. *See, e.g.*, *Williams*, 2025 WL 2985264, at *2–3; *Kelly*, 2016 WL 67285, at *3. The explanation in *Jones* fits the complaint in the case at bar: "[While] [t]he issues in *Price* and *Evergreen* centered on the framework of the federal low-income housing subsidy scheme and individuals' right to benefits under the scheme," a claim "presents unexceptional state law-based tort and breach of contract issues (based on the obligation of a landlord to provide adequate housing to its tenants under state law)" and does not arise under federal law merely because the plaintiff names a Section 8 property owner or manager as a defendant. *Jones*, 2024 WL 6874550, at *4 (citing, among other authorities, *Kelly*, 2016 WL 67285, at *3).

Jones cites HUD rules and regulations throughout her complaint and briefing, but she fails to show how her individual dispute about the amount of back rent implicates federal regulations. She also fails to explain, in either her complaint or response brief, how, if at all, her dispute about the calculation of back rent will affect other tenants sufficiently to promote the

interest in uniformity that led the Seventh Circuit to hold in *Price* and *Evergreen* that the district court had federal question jurisdiction. *See* Resp. to Mot. Dismiss 3–6.

## III. CONCLUSION

Because Jones has not carried her burden to show that the federal issues referenced in her state law breach of contract claim fall into the narrow exception for exercising federal question jurisdiction, defendants' motion to dismiss her complaint for lack of subject matter jurisdiction is granted. If she is able, Jones has twenty-one days, until and including December 9, 2026, to file an amended complaint satisfying her burden to show that this court has subject matter jurisdiction.

Date: November 18, 2026

/s/ Joan B. Gottschall
United States District Judge